354 So.2d 636 (1977)
John H. ANDERSON and Noemie L. Anderson
v.
Jessie B. WEST, Aetna Casualty and Surety Company and Hartford Accident and Indemnity Company.
No. 11684.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
Writs Refused March 31, 1978.
*637 Kenneth L. Riche, Baton Rouge, of counsel for plaintiff-appellant John H. Anderson, et al.
W. Arthur Abercrombie, Jr., Baton Rouge, of counsel for defendant-appellee and third party plaintiff Hartford Accident & Casualty.
Edward W. Gray, Baton Rouge, of counsel for defendant-appellee and third party defendant Jessie B. West and Aetna Casualty and Surety Co.
David W. Robinson, Baton Rouge, of counsel for intervenor-appellee Seaboard Fire and Marine Ins..
Before LANDRY, LOTTINGER and PONDER, JJ.
LOTTINGER, Judge.
This is an action ex delicto filed by John H. Anderson and his wife, Noemie L. Anderson, against Jessie B. West and his insurer, Aetna Casualty and Surety Company, as well as Hartford Accident and Indemnity Company, plaintiffs' insurer under the uninsured motorist provisions of the policy. Seaboard Fire & Marine Insurance Company intervened for workmen's compensation paid to Mrs. Anderson. Judgment was rendered in favor of both plaintiffs in the combined total of $48,553.76, subject to the claim of Seaboard, and limiting the liability of Hartford under the uninsured motorist coverage to $25,000.00. Plaintiffs have appealed.
*638 This suit arises out of an automobile accident which happened on July 18, 1975, in the city of Port Allen, Louisiana. Mrs. Anderson was injured while driving one of the family's automobiles which was involved in an accident with an automobile owned and operated by Jessie B. West. On appeal, the question of liability is not at issue.
The appellants contend the Trial Judge erred (1) in not allowing plaintiffs-appellants to "stack" multiple uninsured motorist (UM) coverage, (2) in failing to allow recovery of pre-trial loss of earnings for the period of time commencing from date of injury, July 18, 1975 and ending August 1, 1976, when Mrs. Anderson retired on medical disability, and (3) in allowing compensation for loss of future earnings for only a seven month period rather than several years as indicated by the medical testimony.

ERROR NO. 1
This accident happened on July 18, 1975, and thus the question of the stacking of uninsured motorist (UM) coverage is controlled by LSA-R.S. 22:1406 D as amended by Act 154 of 1974, Regular Session.
Appellants contend that they are entitled to stack three separate UM coverages of $25,000.00 each based on the UM coverage provisions of their policy with Hartford and that separate premiums were paid for three separate vehicles at the time of the accident. They argue that Act 154 of 1974 in amending LSA-R.S. 22:1406 D did not change the jurisprudence established in Graham v. American Casualty Company, 261 La. 85, 259 So.2d 22 (1972), Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) and Barbin v. U.S.F. & G., 315 So.2d 754 (La.1975).
As far as we have been able to determine, this is the first instance of an interpretation of Act 154 of 1974 to be presented to an appellate court of this state.
Appellee admits that the policy issued to appellant covered three automobiles with single limit coverage of $25,000.00, but argues the liability of Hartford as respects UM coverage was limited by the following language in the policy, to wit:
"LIMITS OF LIABILITY: Regardless of the number of (1) persons or organizations who are insured under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) automobiles or trailers to which this policy applies,

* * * * * *
"(C) The limit of Coverage DUninsured Motorist stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as a result of any one accident."
The Trial Judge held that this language was not contrary to the laws of this state, and thus stacking was prohibited.
Thus it is incumbent upon this Court to determine initially if such policy language is prohibited under the laws of Louisiana.
Appellee argues that LSA-R.S. 22:1406 D as enacted in 1962 and as amended in 1972 provided that a minimum amount of UM coverage was to be afforded, if any at all. Thus, unless the insured rejected UM coverage, a minimum amount of $5,000.00/$10,000.00 must be provided. It is further argued by appellee that the line of jurisprudence authorizing stacking allowed stacking only in instances where its rejection would have resulted in an insurer providing less than the minimum amount of UM coverage required. However, Act 154 of 1974 removed the minimum mandatory amount of coverage by allowing the insured to select none or any amount below the limits of his liability coverage, thus deleting the minimum amount of $5,000.00/$10,000.00 removes the justification as earlier found by the Courts for stacking.
We agree that a mere reading of Act 154 of 1974 without reference to previous or subsequent legislation in this area could possibly lead to the conclusion reached by appellee. However, the function of the *639 Court in interpreting a statute is to ascertain the intention of the legislature and to give effect to the true legislative intent, regardless of how broad and comprehensive may be the language employed. Bonnette v. Karst, 261 La. 850, 261 So.2d 589 (1972), In Re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464 (1936). Therefore, we must determine whether the legislature intended by Act 154 of 1974 to prohibit stacking.
Historically, LSA-R.S. 22:1406 D(1) Uninsured Motorist Coverage, was enacted as Act 187 of 1962, Regular Session. It generally provided that no automobile liability insurance covering liability shall be delivered or issued for delivery in this state unless coverage was provided therein in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana. It allowed, however, that the coverage required could be rejected by the insured.
By Act 137 of 1972, Regular Session, the legislature amended LSA-R.S. 22:1406 D to allow the insured to increase the coverage applicable to uninsured motor vehicles to an amount not in excess of the limits of liability insurance carried by the insured. It did not change the minimum requirements of "not less than the limits described in the Motor Vehicle Safety Responsibility Law."
In Barbin, supra, the Supreme Court held that it was not the intention of the legislature by Act 137 of 1972 to legislatively overrule Graham and Deane, thus, stacking was permissible under the 1972 amendment. All Act 137 of 1972 did was to allow the insured to actively increase his UM coverage.
Act 154 of 1974, Regular Session, in amending LSA-R.S. 22:1406 D(1) removed the minimum limits as required by the financial responsibility law and provided that the policy shall be issued with UM coverage "in not less than the limits of bodily injury liability provided by the policy." It continued to allow the insured to reject, and alternatively allowed him to select any lower limit. The difference between the 1972 and the 1974 acts is that in 1972 the insured must actively select higher limits, whereas in 1974, higher limits were automatically provided, thus the insured passively selected higher UM coverage.
By Act 494 of 1975, Regular Session, the legislature again amended LSA-R.S. 22:1406 D(1) to provide that mandatory issuance of UM coverage at the amount of bodily injury coverage did not apply to the renewal or substituted policies where the insured had rejected or selected lower limits initially.
Then, just recently, by Act 623 of 1977, Regular Session, again amending LSA-R.S. 22:1406 D, the legislature with particularity seemingly prohibited stacking.[1]
*640 In interpreting acts of the legislature, subsequent related acts, in limited circumstances, may provide a guide to the legislature's intent. Washington v. St. Charles Parish School Board, 288 So.2d 321 (La.1974).
The permissibility of stacking had already been jurisprudentially approved prior to the 1974 session of the Louisiana Legislature. Considering the particularity with which the legislature by Act 623 of 1977, Regular Session, prohibited stacking, we must conclude that if the legislature had intended to preclude stacking by the 1974 act, that it would have so said, as it seemingly has done by Act 623 of 1977. Therefore, regardless of any possible interpretation of Act 154 of 1974, and regardless of the broadness of the language contained therein, we are of the opinion that it was not the intention of the legislature in 1974 to prohibit stacking. The public policy of Louisiana as enacted by the legislature and interpreted by the Courts provided that stacking was permissible, and any language contained in insurance policies to prohibit stacking and avoid a stated policy of the state was null and void. Thus, we now hold that any language in the instant Hartford policy intended to prohibit stacking is null and void.

ERROR NO. 2
In disallowing any award for lost income prior to trial, the Trial Judge in his written reasons said:
"The evidence relating to the time during which Mrs. Anderson worked following the accident, as well as whether she was being paid regular wages, sick leave pay, or a medical disability, is uncertain and does not furnish the Court with adequate information in which to make an accurate determination of the earnings which she lost prior to trial."
After thoroughly studying this record as to the proof of lost wages, we find no error on the part of the Trial Judge. This accident occurred on July 18, 1975. In evidence is Mrs. Anderson's W-2 Form for 1974 showing total wages of $6,326.72, and her W-2 Form for 1975 showing total wages of $7,152.56. Additionally, two checks stubs dated January 18, 1976, and February 1, 1976, purportedly each for a two week period show that she was receiving the gross amount of $302.40 per check. There is no evidence that we can find in the record that would lead this Court to believe that Mrs. Anderson suffered any loss of income during the period of July 18, 1975 to August 1, 1976.

ERROR NO. 3
Dr. Bannerman, the orthopedic surgeon who treated Mrs. Anderson, testified that she would not be able to return to work for a minimum of another six to eight months after the trial. Dr. Otwell, her family physician, generally felt that she must get a lot better to return to work. It is apparent that the medical experts could not give to the Court an exact time period within which Mrs. Anderson would be able to return to work. The Trial Judge elected to use the minimum suggested by the orthopedic surgeon, and we find no error.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court insofar as it prohibited stacking and limited the liability of Hartford Accident and Indemnity Company to $25,000.00 is reversed, in all other respects, the judgment is affirmed. All costs of this appeal to be paid by defendant-appellee, Hartford.
REVERSED IN PART, AMENDED AND AFFIRMED.
PONDER, Judge, concurring.
The majority has stated that the "permissibility of stacking had already been jurisprudentially approved . . . ." and that *641 "we must determine whether the legislature intended by Act 154 of 1974 to prohibit stacking." I disagree and submit that the jurisprudence has been that "stacking" has been required to prevent violation of the statutory minimum limit, and that the question before us is whether "stacking" is required to prevent violation of a minimum limit after the amendment of 1974.
The holding of Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) and others is that "stacking" of uninsured motorist coverage is required by the then terms of LSA-R.S. 22:1406 establishing a limit of $5,000.00 on each insured vehicle. Any provision of the policy providing for proration, excess insurance, or anything else that would result in a violation of this minimum was held to be null and void. Barbin v. United States Fidelity and Guaranty Company, La., 315 So.2d 754 (1975), held that the 1972 amendment to LSA-R.S. 22:1406 (D) did not overrule the Graham and Deane decisions; the legislative intent was to allow additional coverage, not to require lower coverage. As a matter of fact the 1972 amendment, Act No. 137, did not alter the minimum amount of $5,000.00. The reasoning of the Graham and Deane cases would still be applicable.
Act No. 154 of 1974 amended LSA-R.S. 22:1406 (D)(1) to set the minimum at "not less than the limits of bodily injury liability provided by the policy" unless the insured "shall reject the coverage or selects lower limits."
In the present case, the amount of the bodily injury liability is $25,000.00; there is no proof that lower limits were selected by the insured. Indeed, the stated amount is $25,000.00. Graham and Deane would still be applicable so as to require the "stacking" of the uninsured motorist coverage of $25,000.00 on each of three cars.
I therefore concur in the result.
NOTES
[1] Act 623 of 1977, Regular Session in part reads:

"Section 1. Sub-paragraph (b) of Paragraph (1) of Subsection D of Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950 is hereby amended and reenacted and sub-paragraph (c) of Paragraph (1) of Subsection D of Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950 is hereby enacted, to read as follows:
§ 1406. Specific duties of casualty and surety division; uninsured motorist coverage
* * * * * *
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)
* * * * * *
(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein shall also permit the insured, at his written request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount.
(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) the uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."