ON REHEARING
Before SAMUEL, GARRISON and SAR-TAIN,* JJ.
SARTAIN, Judge.
We granted a rehearing in this cause to reconsider our original determination that dividends from national bank stock consti *472 tute taxable income to the parent holding company of the bank for state income tax purposes.
The facts, which were submitted to the trial court on stipulation, are not in dispute.
The State seeks additional income taxes from First Commerce Corporation (FCC) for the years 1973 and 1974 on dividends received by the latter on its shares of stock in its wholly-owned subsidiary, First National Bank of Commerce, New Orleans, Louisiana. From a judgment rejecting its demands the State appealed. We affirm.
The State relies on R.S. 47:42 A which defines “Gross Income” for income tax purposes as follows:
“ ‘Gross income’ includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealing in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.”
FCC opposes the tax on the basis that the State, without implementing legislation, cannot now in view of prior federal restrictions impose an income tax on dividends received from national bank stock.
A resolution of this dispute necessitates an understanding and consideration of the pertinent statutes, federal and state, relating to state taxation of national banks in general and on their dividends in particular.
In the very beginning the United States Supreme Court in the landmark case of McCullogh v. Maryland, 4 Wheaton 316, 4 L.Ed. 579 (1819) held that it was not within the power of a state to tax a national bank on any basis whatsoever. In 1864, pursuant to Act of June, 1864, Ch. 106, Section 41,13 Stat. Ill, Congress granted the states the authority to levy an ad valorem property tax on national bank shares. No other tax was permitted. The Act of 1864 remained unchanged until 1923 when Congress enacted Act of March 4, 1923, Ch. 267, 42 Stat. 1499, which permitted a state to tax (1) said shares (ad valorem), or (2) dividends in the taxable income of an owner or holder thereof, or (3) the net income of such associations, with the provision that, “The imposition by said state of any one of the above three forms of taxation shall be in lieu of the others.” In 1926 the Act was further amended to permit a tax (4) according to or measured by the net income of such associations. This latter amendment continued in effect the limitation that the imposition of any one of the above taxes was in lieu of any of the other three taxes. These statutes were the source statutes of 12 U.S.C. § 548. For an extensive review of the federal statutes and jurisprudence relative to state taxation of national banks, see First Agricultural Nat. Bank v. State Tax Com’n., 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). See also 127 A.L.R. 919, 944; 51 Am.Jur. 254, et seq. (265).
In 1878 Louisiana enacted its first ad valorem tax statute. Act No. 8 of 1878, Ex.Sess., Sect. 1, par. 8. This statute is the forerunner of R.S. 47:1967-1970. It is undisputed that since 1878 and until 1973 and in view of the limitation placed on the state by the federal statutes noted above, Louisiana collected only ad valorem taxes on national bank stock.
Louisiana’s income tax was initiated by Act 21 of 1934. Section 1 of the act is identical to the language now found in R.S. 47:42(A), above. Although the act has been amended on four subsequent occasions, this particular section has remained unchanged. Notwithstanding the broad general language of Section 1, the act was amended the following year by Act 21 of 1935, 1st Ex.Sess., to exclude, inter alia, national banks. Section 27(2) of the act is now R.S. 47:121(2), and it reads as follows:
“The following organizations shall be exempt from taxation under this chapter:
# # * * * *
“(2) Mutual savings banks, national banking corporations and banking corpo *473 rations organized under the laws of the State of Louisiana who pay a tax for their shareholders or whose shareholders pay a tax on their shares of stock under other laws of this state, and building and loan associations; * * * ” (emphasis ours)
The 1935 amendment was an obvious attempt by the legislature to have our own income tax statute conform to existing federal legislation and jurisprudence.
With the adoption of Act 21 of 1934 the state commenced the income taxation on dividends derived from state bank stock and continued to do so until 1966 when R.S. 47:8 was enacted. This statute reads as follows:
“Banking corporations organized under the laws of Louisiana and other corporations whose income is derived solely from banking corporations and from securities exempt from taxation by the State of Louisiana and shareholders of such banking corporations shall be subject to the payment of all taxes of the State of Louisiana and any subdivision thereof in the same manner as national banking corporations doing business in Louisiana and their shareholders are taxed by the State of Louisiana and any subdivision thereof under the laws and regulations of the United States of America and the State of Louisiana, and in no other manner.” (Emphasis ours)
Thus ended the disparity that existed between dividends derived from national and state bank stock vis ■ a vis state income taxation. State bank stock dividends were no longer subject to such taxes.
In 1969 Congress amended R.S. § 5219, now 12 U.S.C. § 548, as follows:
“(a) Section 5219 of the Revised Statutes (12 U.S.C. 548) is amended to read:
“SEC. 5219. For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located.
“(b) The amendment made by subsection (a) becomes effective on January 1,1972.”
The saving clause of the act provided:
“(a) Except as provided in subsection (b) of this section, prior to January 1, 1972, no tax may be imposed on any class of banks by or under authority of any State legislation in effect prior to the enactment of this Act unless
“(1) the tax was imposed on that class of banks prior to the enactment of this Act, or
“(2) the imposition of the tax is authorized by affirmative action of the State legislature after the enactment of this Act.
“(b) The prohibition of subsection (a) of this section does not apply to
“(1) any sales tax or use tax complementary thereto,
“(2) any tax (including a documentary stamp tax) on the execution, delivery, or recordation of documents, or
“(3) any tax on tangible personal property (not including cash or currency), or for any license, registration, transfer, excise of other fee or tax imposed on the ownership, use or transfer of tangible personal property,
“imposed by a State which does not impose a tax, or an increased rate of tax, in lieu thereof.”
The effective date of the act was later changed to January 1,1973. Pub.L. 92-213, § 4(a), Dec. 22, 1971, 85 Stat. 775.
The congressional history of the amendment clearly reflects that the Congress was cognizant of the statutes in many of the states, such as our own, and the disarray and confusion that would result in the immediate removal of the federal limitations. The four year delay in the effective date of the amendment (1969-1973) was to enable the states to take appropriate legislative steps to avoid and/or minimize the problem. Our legislature has taken no such action and the question presented here is whether our prior laws on the subject permit the tax now sought to be imposed by the State. For reasons hereinafter stated we hold that they do not.
*474 The State contends that the broad language of R.S. 47:42(A), above, evidences a legislative intent to levy an income tax on all possible sources of income. While it concedes that until 1973 it was prohibited from taxing dividends derived from national bank stock, it now reasons that with the removal of the prior federal limitation the full import of the statute [R.S. 47:42(A)] is applicable.
The State further contends that R.S. 47:8, above, clearly grants a “contingent” exemption to certain corporations and was “also an indication that the Legislature was looking forward to the day when national banks could be treated as state banks.” We fail to detect any such indication. The clear meaning of the statute is to the effect that by taxing state banks the same as national banks no income tax would be imposed on state banks because prior state law [R.S. 47:121(2)] specifically and federal law prohibited the same.
Under the State’s present interpretation of R.S. 47:8, the State will not levy an income tax on state or national banks, dividends on state and national bank stock in the hands of the holders thereof where the ad valorem tax is paid (R.S. 47:1967 et seq.), or state and national bank holding companies whose sole income is from banking operations; but will, as here, include as taxable income dividends received by state and national bank holding companies whose income is also derived from other sources. These latter corporations previously paid income taxes on their other sources of income but their dividends on state and national bank stock were excluded from their gross income. FCC is one of these latter holding companies.
FCC submits (1) that R.S. 47:42(A), above, absent supplemental legislation, cannot now serve as statutory authority for the imposition of state income taxes; (2) that its income from national bank stock should continue the exemption it previously enjoyed under R.S. 47:8, above; and (3) that equal protection of the law requires that it be treated the same as other banking corporations.
We choose to resolve the issue by determining that R.S. 47:42(A), above, as intended by the Legislature did not include in its definition of “Gross Income” dividends derived from National bank stock. Accordingly, it is not necessary that we address the remaining two objections raised by FCC.
The function of the Court in interpreting a given statute, notwithstanding its broad and comprehensive language, is to ascertain legislative intention and to give effect to that intention. Hayden v. Torrence, 355 So.2d 1362 (La.App. 1st Cir. 1978), writ refused 357 So.2d 1166, La., 357 So.2d 1169 (La.1978); Bonnette v. Karst, 261 La. 850, 261 So.2d 589 (La.1972); In re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464 (1936); Anderson v. West, 354 So.2d 636 (La.App. 1st Cir. 1977). Laws, like contracts, are to be construed in light of conditions as they existed at the time of their enactment. Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 176 So.2d 425 (1965).
Were there any doubt in our minds that the legislature did not intend to include dividends from national bank stock in the definition of gross income by the Act of 1934 [R.S. 42(A)] that doubt is totally removed by the Act of 1935,1st Ex.Sess. [R.S. 47:121(2)] which specifically excluded “national banking corporations” and shareholders who pay a “tax on their shares of stock under other laws of this state”, namely ad valorem. R.S. 47:121(2) remains a viable statute of this state on the subject and its repeal cannot be effected by implication. Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975).
We think it would be very unsound statutory construction to attach to a statute an intention based on some future contingency, namely the withdrawal of the federal limitation, where the statute itself does not expressly set forth the contingency. The legislature is presumed to know the existing law and the effect of its own legislation. In our opinion the legislature manifested a knowledge of the federal limitations and *475 the alternatives available to it when it adopted the general income tax statute in 1934, amended it to exclude national banks in 1935, and has not addressed itself to the issue since.
At stake is the effect the State’s position will have on the entire banking industry within the state. It is a matter that truly addresses itself to the legislature.
For these reasons our original judgment is recalled and vacated and the judgment of the district court is affirmed. All such costs as are permitted by law are to be borne by the state.

AFFIRMED.