WICKER, Judge.
This appeal arises from the trial court’s granting of judgment in favor of defendants/appellees, the City of Gretna and Adam Arabie, Building Permit Issuer, affirming the decision of Gretna’s Mayor and Board of Aldermen denying a billboard permit to plaintiff/appellant F.W.F. Company, Inc. (F.W.F.). We affirm.
F.W.F. owns property in the City of Gret-na upon which is situated a restaurant known as “The Eatery.” The company filed a permit application on July 18, 1986 for what it considered to be a “sign”; however, the Mayor and the Board of Aider-men denied the issuance of a permit for its construction, concluding that the alleged “sign” was actually a billboard. Their basis for denial was grounded in ordinances which placed a moratorium on the construction of billboards.
The first moratorium (Ordinance No. 1545) was adopted on November 7, 1977. It precluded the erection of billboards “along the right of way of the Westbank Expressway in the City of Gretna.” The second moratorium (Ordinance No. 1788) was adopted November 4, 1985. It provided that “a moratorium be placed on the erection of billboards within the limits of the City of Gretna.”
It is appellant's contention that these two ordinances do not apply to his situation since his device is a “sign” and not a billboard. In addition, appellant contends that since his property fronts on Whitney Avenue rather than on the Westbank Expressway, Ordinance No. 1545 does not apply for that reason as well.
The trial judge concluded that F.W.F.’s “sign” was actually a billboard and that it fell within the ambit of Ordinance Number 1545. From that adverse judgment F.W.F. now appeals and specifies as error the trial judge’s concluding that the “sign” was a billboard under the terms of the ordinance and that the moratorium against billboards on property fronting on the Westbank Expressway applied to F.W.F.’s property.
The threshold issue is whether the device sought to be constructed by F.W.F. was a billboard for the purposes of the Gretna ordinances since the moratorium only applied to billboards. Moreover, although F.W.F. argues that Ordinance Number 1545 does not apply since its property does not front the expressway, we note that on November 4, 1985 Ordinance Number 1788 was approved which established “that a moratorium be place on the erection of billboards within the limits of the City of Gretna.” Introduced into evidence is the description of the property which establishes that the property on which the device would be erected is located in Gretna, Louisiana.
We therefore need not address the issue of whether the trial judge erred insofar as holding that the Gretna property fronts the Westbank Expressway so as to place it within the 1545 ordinance since Ordinance Number 1788 was in effect at the time F.W.F. applied for its permit in July, 1986 and Ordinance 1788 clearly applies to billboards within Gretna city limits.
Neither Ordinance 1545 nor Ordinance 1788 defines billboard. However, a proposed comprehensive ordinance was introduced at trial which contained a definition of billboard. This ordinance was introduced at the Board of Aldermen meeting on September 2, 1986. On February 6, 1987 a comprehensive sign regulation (Ordinance Number 1834) was adopted which defined billboard in the same fashion it had been defined in the proposed comprehen *899 sive ordinance. Moreover, Ordinance 1788, an emergency ordinance, contemplated the enactment of the comprehensive sign regulation ordinance. It stated in part that:
1. Purpose. The City intends to pass a comprehensive sign regulation ordinance, which will be designed to, among other things, promote the economic welfare of the public of the City by regulating the erection of signs, in such a way that property values will be stabilized and improved.
Ordinance Number 1834, Section 3(1) defines billboard as follows:
‘Billboard’ shall mean an outdoor advertising sign which is supported by uprights or braces and which is not an accessory sign relating to a business activity, use or service undertaken on the premises on which it is placed. Nor does a billboard advertisement relate to a product sold, handled or fabricated on the same premises upon which it is placed. The billboard’s function is to produce revenue for its owner or lessee by advertising a product, service, business, profession, enterprise or industry which may be provided by someone other than said owner or lessee. A billboard is so designed that its advertisement can be changed or altered with relatively minimal effort.
A billboard may be luminated as well as non-illuminated, and it may be computer operated.
In Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984) the court set out the rules for interpreting ordinances as follows:
[t]he statutory and jurisprudential rules for the construction and interpretation of state statutes are applicable to the construction and interpretation of municipal and parochial ordinances. Lieber v. Rust, 388 So.2d 836 (La.App. 2nd Cir.1980), affirmed, 398 So.2d 519 (La.1981), [writ denied 410 So.2d 1132 (La.1982)]; Louisiana Television Broadcasting Corp. v. Total C.A.T.V., 341 So.2d 1183 (La.App. 1st Cir.1976), writ refused, 343 So.2d 1076 (La.1977). When a law or ordinance is clear and free from all ambiguity, it must be given effect as written. La.C.C. art. 13; La.R.S. 1:4; Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975); Roman Catholic Church of Archdiocese of New Orleans v. State, Department of Labor, Office of Employment Security, 387 So.2d 1248 (La.App. 1st Cir.1980), writ denied, 394 So.2d 607 (La.1980) [cert. denied 452 U.S. 914, 101 S.Ct. 3048, 68 L.Ed.2nd 418 (1981)].
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended ... The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker. [Citations omitted.]
When the expressions of a ’aw are ‘dubious’, the most effectual way of discovering the true meaning of the law is to consider the reason ar. spirit of it, or the cause which induced the lawmaker to enact it. La.C.C. art. 18; Nash v. Whitten, 326 So.2d 856 (La.1976); Groves v. Board of Trustees of Teachers’ Retirement System of Louisiana, 324 So.2d 587 (La.App. 1st Cir.1975), writs denied, 326 So.2d 378, 380 (La.1976). Id. at 1360.
As noted in Authement v. Davidson, 366 So.2d 986 (La.App. 1st Cir.1978), the trial court and the appellate court:
*900 can consider all of the factual evidence preceding, surrounding, and following the enactment of a statute. State v. Nicholls, 30 La.Ann. 980 (1878), Anderson v. West, 354 So.2d 636 (La.App. 1st Cir.1977), writ denied 356 So.2d 1013, 1387 (La.1978) and Gremillion v. Lancaster, 244 So.2d 862 (La.App. 1st Cir.1971), writ denied 258 La. 573, 247 So.2d 393 (1971). Id. at 989. See also Jones v. Dept. of Health & Human Resources, 430 So.2d 1203 (La.App. 1st Cir.1983).
At trial, Darryl Ford (Ford), Vice-President of F.W.F. and the owner of the property for which the structure was sought, stated that on September 2, 1986 the Board of Aldermen denied the permit. On that same date the comprehensive sign ordinance which contained the definition of billboard was introduced.
Although the comprehensive ordinance was not law at the time of the denial, nevertheless the intent of the lawmakers can be ascertained from the definition used in the proposed comprehensive sign ordinance which was ultimately adopted since the very purpose of emergency Ordinance Number 1788 which was in effect on the date of the denial, was the adoption of the comprehensive law.
Ford testified that he entered into an agreement with American Sign and Indicator Corporation on June 30, 1986 for the purpose of erecting a “sign” provided that permits could be obtained. He described the “sign” as an elevated device which would be supported by uprights or braces and which would not be directly attached to the restaurant located on the premises.
The purpose of the “sign” was to advertise Ford’s business as well as other sponsors. The sponsors would include products sold in the restaurant. It could also feasibly include the advertisement of products not sold on the premises.
The proposed “sign” contained an 874 square foot area. It would be controlled by a computer in which messages could be changed in a matter of seconds. While there would be panels which carried permanent advertising, the major part of the area would be devoted to advertising of a less permanent nature. Furthermore, the “sign” would be illuminated at night.
Gerald Coogan (Coogan), an employee of American Sign and Indicator Corporation, described the device as an “electronic animated matrix board.” The messages on this board could be easily changed via computer. Revenues would be produced from advertising products.
The device has characteristics of a sign as well as of a billboard. On one hand it serves the purpose of advertising the restaurant located on the premises; while it also serves to advertise products purchased on the premises as well as outside of the restaurant. Its sole function is not that of a sign, however. It clearly meets the definition of a billboard as used in the comprehensive sign regulation ordinance.
It is an outdoor advertising sign supported by uprights or braces. It does not necessarily relate to only those products which are sold on the premises. By procuring sponsors, Ford has a source of revenue generated by advertising. Importantly, the advertisements on the device can be changed with relatively minimal effort. As defined in the proposed sign regulation ordinance a billboard may also be computer operated.
Thus, the intent of the Mayor and the Board of Aldermen was to place a moratorium on such structures as Ford’s. Accordingly, we find no abuse of the trial judge’s discretion or that he was clearly wrong in denying F.W.F.’s petition for relief from the denial of a permit from the City of Gretna. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Landry v. Schneckenberger, 466 So.2d 616 (La.App. 5th Cir.1985), writ denied 468 So.2d 577 (La.1985).
Although the trial judge did not rely on the definition used in the proposed ordinance to show intent, but instead relied on general knowledge as to the meaning of billboard, he nevertheless reached the correct result. Evidently the trial judge relied on L.S.A.-C.C. Article 14 which provides in part that “[t]he words of a law are general *901 ly to be understood in their most usual signification.” See also, Liller v. Louisiana Board of Alcoholic Beverage Con., 59 So.2d 222 (Orl.La.App.1952); B.W.S. Corporation v. Evangeline Parish Police Jury, 293 So.2d 233 (La.App. 3rd Cir.1974).
For the reasons stated the judgment denying F.W.F. relief from the denial of a permit for a billboard by the City of Gretna is affirmed at appellant’s cost.
AFFIRMED.