315 So.2d 754 (1975)
Charles and Betty BARBIN et al., Plaintiffs-Appellees-Relators,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant-Respondent.
No. 55625.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*755 John T. Bennett, Riddle & Bennett, Marksville, for plaintiffs-applicants.
Daniel R. Atkinson, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for defendant-respondent.
TATE, Justice.
The principal issue before us is whether a 1972 amendment legislatively overruled our decision in Graham v. American *756 Casualty Company of Reading, Pennsylvania, 261 La. 85, 259 So.2d 22 (1972). We there held that multiple uninsured-motorist coverages, for which separate premiums are charged, afford insurance for limits up to the cumulated ("stacked") total of all coverages. See also Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972).
In the present case, the defendant insurer had issued the plaintiff Charles Barbin a family automobile liability policy which insured his two vehicles, a Ford and a Chevrolet. For each of the vehicles described, the insurer had charged a premium for uninsured-motorist coverage.
While using the Ford, Barbin, as driver, and his wife and two other couples, as passengers, were injured through the negligence of an uninsured motorist. Each of the three couples sued for damages thereby resulting. These suits were consolidated for trial, as well as for purposes of review.
The insurer contends it is liable for no more than the ten thousand dollar limit per accident of one uninsured-motorist coverage (i.e., that for which a premium was charged in connection with the Ford described by the policy and involved in the accident). The trial court rejected this contention and held that the named insured, his wife, and the other four occupants of the automobile were entitled to recover damages up to the total cumulated ("stacked") limits of twenty thousand dollars of both coverages.
On the defendant insurer's appeals in the three suits, the court of appeal reversed the judgments in favor of the three couples.[1] 302 So.2d 631 (La.App. 3d Cir. 1974); 302 So.2d 634 (La.App. 3d Cir. 1974); 302 So.2d 635 (La.App. 3d Cir. 1974). On application of all six plaintiffs, we granted certiorari, 305 So.2d 125 (La.1975).
The court of appeal agreed that, under Graham and Deane, the cumulated ("stacked") limits of both coverages were available to those insured by the coverage, as held by the trial court. Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Graham v. American Casualty Company of Reading, Pennsylvania, 261 La. 85, 259 So.2d 22 (1972); Wilkinson v. Fireman's Fund Insurance Company, 298 So.2d 915 (La.App. 3d Cir. 1974), application for certiorari by insurers denied, 302 So.2d 306 (La.1974), 302 So.2d 308 (La.1974). However, the majority opinion of the intermediate court felt that this jurisprudence had been legislatively overruled by a 1972 amendment to La.R.S. 22:1406(D) (1).
First enacted by Act 187 of 1962, at the time of the accident this statutory provision required that, unless the insured expressly rejected the coverage: "No automobile liability insurance . . . shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided . . . . in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . .." (At La.R.S. 32:900(B) (1962), the motor vehicle responsibility act requires a minimum coverage of five thousand dollars per person and ten thousand dollars per accident.)
The issue before us is whether a 1972 amendment to La.R.S. 22:1406(D)(1) was *757 intended to overrule legislatively the Graham and Deane decisions of this court and the succeeding jurisprudence in their holdings that cumulated ("stacked") rather than shared limits result when multiple uninsured-motorist coverages are afforded for separate premiums.
By the amendment added by Act 137 of 1972, a subsection (b) was added to (D) (1), which reads:
"Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured." (Italics ours.)[2] Relying on the italicized words, the majority opinion of the court of appeal held that the intent of the amendment was to limit uninsured-motorist coverage, when provided in accordance with the statute, to an amount not to exceed the total limits of the automobile liability insurance policy carried by the insured.
We think that the majority opinion was in error in ascribing this intent to the legislative amendment. Instead of limiting coverage to a maximum amount no matter how many premiums were paid for such coverage, its apparent intent was to require the insurer to afford uninsured-motorist coverage to its insureds additional to the former five-ten thousand dollars limits mandatorily required to be furnished by the prior law, if an insured did not reject it, when an automobile liability policy was issued.
As the dissenting judge correctly stated, 302 So.2d 634:
"The language of LSA-R.S. 22:1406(D) which is the basis of the Graham and Deane decisions has not been changed by the 1972 amendment. That amendment merely added subsection (D)(1)(b) to provide that an insurer must permit the insured to purchase the amount of uninsured motorist coverage he desired up to the limits of the liability coverage carried by him. The majority holds that this addition prevents stacking of uninsured motorist coverage because the insured cannot purchase such coverage in excess of the liability limits of his policy.
"* * * [S]ubsection (D)(1)(b) was not added to limit the amount of uninsured motorist coverage that may be purchased by an insured. Rather it requires the insurer to provide uninsured motorist coverage up to the limits of the liability coverage. A greater amount of uninsured motorist coverage can still be provided. The `not in excess of' language merely limits what the insurer must provide, not what he may provide. Thus, the addition has no effect on the basis of the holdings in Graham and Deane * * *."

Other Contentions

(a)
The insurer additionally contends that a clause in the uninsured motorist coverage limits the insurer's liability to a total limit of that applicable to "each person" (here five thousand) and to "each accident" (here ten thousand) as stated in the declarations of the policy.[3]
*758 Graham, Deane, and our recent decision in Hebert v. Green, 311 So.2d 223 (La.1975) have held that any clause in derogation of the mandatory requirement that an insured provide uninsured-motorist coverage in certain limits for each insured vehicle, La.R.S. 22:1406, is invalid insofar as it conflicts with this legislative requirement.
With regard to the specific issue now before us, in Wilkinson v. Fireman's Fund Insurance Company, 298 So.2d 915, 918 (La.App. 3d Cir. 1974), certiorari denied ("No error of law") 302 So.2d 306 (La.1974), 302 So.2d 308 (La.1974), the court of appeal correctly held:
"The statute in effect requires uninsured motorist protection to be offered in all insurance issued `with respect to any motor vehicle' in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana. * * *
* * * [T]he clear intent of Graham, Deane, and the other cited cases is to the effect that if a plaintiff is issued insurance on two or more automobiles, pays premiums for two or more different uninsured motorist coverages, and sustains damages thereunder in excess of the mandatory minimal coverage, he can `stack' coverages and recover his damages. . . . This intent should not be circumvented merely because separate vehicle coverages are placed in one policy, rather than in multiple policies."

(b)
The defendant-insurer alternatively contends that none of the four passengers were an "insured" within the uninsured-motorist coverage for which a premium was charged in connection with the Chevrolet, because at the time of the accident they were occupying the Ford.
Under the express terms of the uninsured-motorist coverage (Part IV of the policy), the named insured and his wife (a "relative . . . resident of the same household") are specifically included within the definition of an "insured" for purposes of the coverage. Such definition also expressly includes "any other person while occupying an insured automobile . (Italics ours.) An "insured automobile" is defined, for purposes of the coverage, as "an automobile described in the policy for which a specific premium charge indicates that coverage is afforded." (Italics ours.)
Thus, each uninsured-motorist coverage (each issued for a separate premium) included not only tort-caused damages to the named insured (and relatives living in his household) resulting from operation of an uninsured motor vehicle, whether or not the named insured or his relative was injured while using the Ford and Chevrolet described in the policy. Each such coverage also included any passenger injured by an uninsured motorist while the passenger was occupying either the Ford or the Chevrolet described in the policy: Both vehicles were defined as "insured vehicles" for purposes of the coverage, since each vehicle was described in the policy and since, for each vehicle, a specific premium charge indicated that uninsured-motorist coverage was afforded. No relevant authority is cited contrary to this construction of the unambiguous policy provisions.

Decree
For the foregoing reasons, the judgments of the court of appeal are reversed, and the trial court judgments are reinstated. All costs of these proceedings are to be paid by the defendant-appellant.
Court of Appeal decrees reversed, and trial court judgments reinstated.
NOTES
[1] Prior to suit, the insurer had paid the ten thousand per accident limits provided by the uninsured-motorist coverage obtained through the premium ascribed to such coverage issued as part of insuring the Ford described by the policy. The present suit is for the additional ten thousand dollar limits provided by the uninsured-motorist coverage obtained through the premium ascribed to such coverage issued as part of insuring the Chevrolet. It is stipulated that total damages sustained by the three couples equal or exceed twenty thousand dollars. The three judgments allocate an award totalling the second ten thousand limit among the three couples.
[2] This provision was amended by Act 154 of 1974 so that La.R.S. 22:1406(D)(1) now requires the insurer to furnish uninsured-motorist coverage in the limits provided by the liability policy, unless the insured expressly rejects such coverage.
[3] The clause provides:

"The limit of liability for Uninsured Motorists (Family Protection) Coverage stated in the declarations as applicable to `each person' is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to `each accident' is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."