367 So.2d 1227 (1979)
Edward A. BRILEY
v.
Frank S. FALATI et al.
No. 9972.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 1979.
Rehearing Denied March 14, 1979.
Olivier & Brinkhaus, Armand J. Brinkhaus, Sunset, for plaintiff-appellant.
Bruce J. Borrello, Metairie, for defendants-appellees.
Before LEMMON, BOUTALL and BEER, JJ.
BEER, Judge.
Edward A. Briley was injured in an automobile collision involving the 1974 Ford which he had leased through Bordelon Leasing, Inc. and the 1970 Chevrolet of Frank S. Falati. He filed suit for damages in the amount of $1,350,000 against Falati, Aetna Casualty (Falati's auto liability insurer), Travelers Insurance Company (his own uninsured motorist insurer), and Liberty Mutual Insurance Company, who had issued a combination basic automobile policyincluding uninsured motorist coverageto Ford Motor Company, the owner of the 1974 Ford leased by Briley.
Travelers and Liberty Mutual separately moved for summary judgment, each contending that Aetna provided liability coverage in an amount which exceeded the uninsured motorist coverage of their respective policies.[1]
The trial court granted summary judgment in favor of Travelers, relying upon Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3rd Cir. 1974), and also granted summary judgment in favor of Liberty Mutual, notwithstanding Briley's contention that the multi-vehicle aspect of that policy provided coverage greater than Aetna's liability limits.
The accident occurred on July 9, 1974, prior to the effective date[2] of the 1974 amendment to LSA-R.S. 22:1406D(2)(b) entitled in part "Uninsured Motorist Coverage." Thus, the applicable statutory authority dealing with the issue of whether Falati is an uninsured (or, more precisely, underinsured) motorist is LSA-R.S. 22:1406 (1972), since the 1974 amendment is not retroactive. Doucet, supra; accord, Butler v. MFA Mutual Insurance Company, 356 So.2d 1129 (La.App. 2nd Cir. 1978); Fontenot v. Guillory, 327 So.2d 578 (La.App. 3rd Cir. 1976). The 1972 statute provides that an "uninsured motor vehicle" is "an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by the insured." (Emphasis ours.)
Even so, Briley's able counsel further contends that Briley is entitled to cumulate, or stack, the separate uninsured motorist coverages (5,000/10,000, each) on the 66 vehicles *1228 included on Liberty Mutual's multi-vehicle policy issued to Ford, the owner of the leased vehicle. However, we believe his reliance upon Barbin v. United States Fidelity & Guaranty Company, 315 So.2d 754 (La. 1975), to support this contention is misplaced. Barbin states that:
"* * * (T)he clear intent of Graham [v. American Casualty Co. of Reading, Penn., 261 La. 85, 259 So.2d 22], Deane, and the other cited cases is to the effect that if a plaintiff is issued insurance on two or more automobiles, pays premiums for two or more different uninsured motorist coverages, and sustains damages thereunder in excess of the mandatory minimal coverage, he can `stack' coverages and recover his damages. . . . This intent should not be circumvented merely because separate vehicle coverages are placed in one policy, rather than in multiple policies." (Emphasis added.)
Against the background of who paid the premium for the uninsured motorist coverage, the able trial judge relied upon the rationale of Lambert v. Liberty Mutual Insurance Company, 331 So.2d 260 (Ala.1976), even though it is not a Louisiana case. In Lambert, an employee of the named insured-employer sought to stack uninsured motorist coverages on multiple vehicles insured under one policy purchased by his employer. The court reasoned that the status of a permissive user of an insured vehicle was distinguishable from the named insured "who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy." The Lambert court cited Cunningham v. Ins. Co. of North America, 213 Va. 72, 189 S.E.2d 832 (1972), which recognized that the privilege of stacking is afforded a "named insured" in exchange for his additional premium, observing:
"The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, this argument and reasoning does not apply to a permissive user of a vehicle . . . ." Cunningham, 189 S.E.2d at 836.
The generally accepted rationale that ambiguities in insuring agreements are to be resolved against the drafting party (invariably, the insurance company) does not affect the issue here. What is at issue is the extent to which an underwriting agreement, or agreements, should be subjected to "interpretation" in order to increase coverage because a tragic injury is out of proportion with the coverage available.
Regardless of the seriousness of the injuries, we cannot permit a potentially fortuitous coincidence to form the basis for an otherwise unsupportable legal conclusion.
An insured who pays premiums on several accident and health policies has a right to collect from the underwriters of each of those policies on the basis of a single injury covered by each of the policies. Stated another way, one who has anticipated a particular need, and, in advance, contractually provided for same pays greater premiums and, in return, has greater coverage.
Thus, the driver of a borrowed automobile who has paid premiums for uninsured motorist coverage on his owned automobile is, and should be, in a different category (vis-a-vis uninsured motorist coverage) than a permissive user whose only uninsured motorist coverage is resulting from his permissive use of the vehicle. Though a permissive user is clearly entitled to be considered an omnibus insured as to the uninsured motorist coverage provided that vehicle, he has no other implicit or actual right. Louisiana drivers who, perceiving the need for uninsured motorist coverage in greater than the basic amounts, have the opportunity to purchase same and, in so doing, are entitled, under certain circumstances, to "stack" that coverage with the uninsured motorist coverage existent on an individually borrowed or leased vehicle,[3] but that is only because the concerned individual anticipated his needs and, thereupon, contracted for and paid for additional coverage.
*1229 Therefore, even assuming, arguendo, that no problems of jurisdiction exist in this case, we conclude that the trial court was correct in granting summary judgment which is, accordingly, affirmed, at appellant's cost.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Judge, concurs and assigns reasons.
The determinative issue in this case is whether the tortfeasor's automobile qualified as an uninsured motor vehicle under Louisiana's uninsured motorist (U.M.) law as it existed in July, 1974.[1]
The tortfeasor's car was covered by a policy which provided liability coverage of $50,000.00. Plaintiff's personal policy with Travelers provided U.M. coverage of $5,000.00, and Ford's commercial fleet policy with Liberty Mutual provided U.M. coverage of $5,000.00 for each of the 66 cars insured under the policy.
When R.S. 22:1406 was amended in 1972 to require insurers to permit an insured to increase his U.M. coverage to any amount not in excess of the policy's liability coverage, the definition of an uninsured motor vehicle was expanded to include an insured vehicle "when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by the insured".[2] The threshold question in determining whether the tortfeasor's car in this case qualified as an uninsured motor vehicle is whether stacking can be used to determine the total U.M. coverage "carried by the insured", or whether there must first be a determination that the tortfeasor's vehicle is uninsured (by comparison of the tortfeasor's liability coverage to the single U.M. coverage "carried" by the insured on the vehicle involved in the accident) before stacking can be used to give the tort victim recovery on more than one U.M. coverage.
In Phillips v. Barraza, 320 So.2d 587 (La. App. 4th Cir. 1975), decided while the 1972 amendment to R.S. 22:1406 was in effect, another panel of this court decided under similar facts that:
"stacking is permitted . . . in order to meet the statutory requirement that the uninsured motorist coverage of the tort victim be in excess of the liability coverage of the tort feasor's vehicle".
The court in effect decided that if "stacking" is permitted in this jurisdiction, then "stacking" should be permitted for all purposes. Accordingly, plaintiff is entitled to stack the total U.M. coverage properly available to him in order to determine whether the total U.M. coverage "carried by the insured" exceeds the $50,000.00 liability limits of the tortfeasor's policy. See also Rascoe v. Wilburn, 295 So.2d 201 (La. App. 3rd Cir. 1974).
The next determination, therefore, is the amount of the total U.M. coverage available to plaintiff. In this respect plaintiff contends that since he was an insured under the U.M. coverage on all 66 vehicles listed in Liberty Mutual's fleet policy, he may stack all 66 coverages.
Plaintiff relies on Barbin v. United States Fid. and Guar. Co., 315 So.2d 754 (La.1975), in which non-owner passengers were granted recovery under U.M. coverage provided on each of two cars described in the owner-driver's policy (although they were, of course, only occupying one car at the time of the accident). The Barbin decision was based on the reasoning that the term "insured" was defined under the U.M. coverage to include "any other person while occupying an insured automobile" and that the term "insured automobile" was defined as "an automobile described in the policy for which a specific premium charge indicates that coverage is afforded".[3]
*1230 In Barbin, if the court overconstrued the term "occupying", that position can best be justified on the basis that the named insured intended, in contracting for a family policy, to insure and to provide all possible coverage for his family members and his passengers, and that any reasonable construction favorable to an insured must prevail over a reasonable unfavorable construction. However, no such intention can reasonably be attributed to the insured under the commercial fleet policy in this case.[4] It would not be reasonable to attribute to Ford Motor Company (or Ford Rent-a-Car) the intention to make its lessee an insured except as to the particular vehicle which was leased.
I would vote not to extend the Barbin decision to apply to commercial fleet policies covering numerous rental vehicles.
Accordingly, since the U.M. coverage on the other 65 cars described in Liberty Mutual's policy is not available to plaintiff, the total U.M. coverage properly available to him does not exceed $50,000.00, and the tortfeasor's vehicle does not qualify as an uninsured motor vehicle. Both Liberty Mutual and Travelers were properly dismissed by summary judgment.
NOTES
[1] It is uncontroverted that Aetna's policy limit is $50,000; that Travelers' is $5,000; and that Liberty Mutual's per car limit is $5,000.
[2] August 1, 1974.
[3] La.R.S. 22:1406D(1)(c)
[1] Pretermitted, among other issues, is Liberty's substantial [but probably incorrectsee concurring opinion in Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972)] contention that the applicable law is that of Michigan, where its policy was issued.
[2] The statute was again amended by Act No. 154 of 1974 to "clarify the definition of an uninsured motor vehicle" to include an insured vehicle whose liability coverage is less than the amount of damages suffered by an insured.
[3] The Barbin decision was criticized as "holding under a strained interpretation of the policy that occupancy of any insured vehicle activated coverage for all vehicles". Work of the Louisiana Appellate Courts for the 1976-1977 Term Insurance, 38 La.L.Rev. 313, 449 (1978).
[4] In the fleet policy the definition of "insured" is the same as in the policy in the Barbin case, but "insured automobile" is defined as "an automobile. . . described in the schedule as an insured automobile to which the bodily injury liability coverage of the policy applies."