398 So.2d 1299 (1981)
Mary Alice HEBERT, Plaintiff-Appellant,
v.
James F. BREAUX, Jr., et al., Defendants-Appellees.
No. 8120.
Court of Appeal of Louisiana, Third Circuit.
May 6, 1981.
Writ Denied June 22, 1981.
*1300 Michael Harson, Lafayette, for plaintiff-appellant.
Onebane, Donohoe, Berrand, Torian, Diaz, McNamara & Abell, Frank X. Neuner, Voorhies & Labbe, John N. Chappuis, McBride & Brewster, Norman P. Foret, Lafayette, for defendants-appellees.
Before GUIDRY, SWIFT, STOKER, DOUCET and LABORDE, JJ.
SWIFT, Judge.
In this suit plaintiff, Mary Alice Hebert, seeks recovery under the uninsured motorist provisions of a policy of insurance issued by Bellefonte Insurance Company, hereafter Bellefonte, to her father, Alfred Hebert. The trial court granted summary judgment dismissing plaintiff's claim against Bellefonte. Plaintiff appeals.
There are three issues presented on appeal:
(1) Is plaintiff afforded coverage under the uninsured motorist provisions of the automobile insurance policy issued by Bellefonte to plaintiff's father, Alfred Hebert?
(2) Assuming coverage is afforded, can plaintiff "stack" the UM coverage provided on two vehicles insured by the subject policy resulting in UM coverage of $20,000.00 for each person and $40,000.00 for each occurrence?
(3) Assuming coverage is afforded, is plaintiff entitled to recover penalties and attorney's fees under the circumstances of the present suit?
The parties stipulated to the facts pertinent to a resolution of the issues presented and submitted the matter to the trial court for its decision. The trial court, without rendition of reasons, dismissed plaintiff's claim concluding that the uninsured motorist provisions of the insurance policy issued by defendant afforded no coverage to the plaintiff. Thus, the lower court did not reach the "stacking" issue or the issue of penalties and attorney's fees.
According to the record, on September 13, 1977, James F. Breaux drove his automobile over the center line of Cameron Street in Lafayette, Louisiana, striking plaintiff's vehicle head-on. The negligence of Breaux is undisputed. The parties stipulated that plaintiff's injuries entitled her to recover damages in excess of $36,000.00.
At the time of accident, plaintiff was thirty-two years old and resided with her parents in Lafayette. Ms. Hebert owned the 1975 Chevrolet Nova which she was driving at the time of the collision. It is undisputed that plaintiff is a member of her parents' household.
Plaintiff settled her claims against Breaux and his liability insurer, Dairyland Insurance Company, for $5,000.00. In addition, plaintiff settled her claims against her own liability insurer, State Farm Mutual Automobile Insurance Company for $10,000.00 under that policy's uninsured motorists provisions. In each of the aforesaid settlements, plaintiff reserved her rights against all other remaining parties in the litigation. Subsequently, plaintiff's claims against Breaux, Dairyland, and State Farm were dismissed by the trial court.
On February 4, 1977, Bellefonte issued an automobile liability insurance policy to plaintiff's father, Alfred Hebert, which was in full force and effect on the date of *1301 plaintiff's accident. The subject policy provided coverage for two vehicles owned by Mr. Hebert, specifically, a 1974 Toyota pickup truck and a 1973 Chevrolet Impala. Further, the policy provided uninsured motorists coverage in the amount of $10,000.00 for each person and $20,000.00 for each accident.
IS PLAINTIFF AFFORDED COVERAGE UNDER THE UNINSURED MOTORIST PROVISIONS OF THE BELLEFONTE POLICY?
The plaintiff contends on appeal that the trial court erred in its conclusion that she was not afforded coverage under the uninsured motorists provisions of the policy issued by Bellefonte. Under the pertinent terms of the policy, an "insured" for the purposes of UM coverage is defined as:
"(a) the named insured and any relative;" Further, the policy defines a "relative" as "a relative of the named insured who is a resident of the same household;".
Under the facts stipulated to by the parties, plaintiff is an insured for the purposes of UM coverage under the Bellefonte policy absent any applicable exclusions. The only exclusion pertinent to the plaintiff provides:
"Exclusions: This policy does not apply under Part IV:
(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile; ..."
As we appreciate defendant's argument in support of the trial court's judgment, defendant contends that although plaintiff falls within the policy's definition of an "insured", she is precluded from coverage because she was not driving an "insured automobile" at the time of the accident. An "insured automobile" as defined by the policy means:
"`insured automobile' means:
(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded,
(b) a private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period, provided
(1) it replaces an insured automobile as defined in (a) above, or
(2) the company insures under this Coverage all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make the Liability and Uninsured Motorist Coverages under this and no other policy issued by the company applicable to such automobile,
(c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above, and
(d) a non-owned automobile while being operated by the named insured; and the term `insured automobile' includes a trailer while being used as an automobile described in (a), (b), (c) or (d) above, but shall not include:
(1) any automobile or trailer owned by a resident of the same household as the named insured,
(2) any automobile while used as a public or livery conveyance, or
(3) any automobile while being used without the permission of the owner."
In other words, Bellefonte maintains that in order to recover under the subject policy's UM provisions, the plaintiff must not only be within the policy's definition of an "insured", but also, be driving an "insured automobile" as defined in said policy. This argument has been rejected by our courts on numerous occasions. At the outset, we observe that the exclusionary provision of the subject policy as quoted above has been declared to be against public policy as expressed in LSA-R.S. 22:1406(D). See Guillot v. Travelers Indemnity Company, 338 So.2d 334 (La.App. 3 Cir. 1976), writ refused 341 So.2d 408 (La.1977); Bourgeois v. United States Fidelity and Guaranty Company, 385 So.2d 584 (La.App. 4 Cir. 1980); Griffin v. Armond, 358 So.2d 647 (La.App. 1 Cir. *1302 1978); Thomas v. Nelson, 295 So.2d 847 (La.App. 1 Cir. 1974), writ refused 299 So.2d 791 (La.1974); Elledge v. Warren, 263 So.2d 912 (La.App. 3 Cir. 1972), writ refused, 262 La. 1096, 266 So.2d 223. The intent of the statute is to provide protection to an insured who becomes the innocent victim of the negligence of an uninsured motorist. As long as the claimant is an "insured" under the policy, he is entitled to UM coverage whether or not he is driving an automobile insured by the policy. Any exclusion providing more restricted UM coverage is in derogation of the statute. Elledge v. Warren, supra; Griffin v. Armond, supra; Bourgeois v. United States Fidelity and Guaranty Company, supra. In Bourgeois, supra, our brethren of the Fourth Circuit expressed agreement on this issue with this court and our brethren of the First Circuit stating:
"... Although neither the Supreme Court, nor this Court, have passed on the issue confronting us in the instant case, our brothers on the First and Third Circuits have concluded that an exclusion for uninsured motorist coverage of an insured as defined in the policy is against public policy. See Griffin v. Armond, 358 So.2d 647 (La.App. 1 Cir. 1978); Thomas v. Nelson, 295 So.2d 847 (La.App. 1 Cir. 1974), writ. denied [La.] 299 So.2d 791; Elledge v. Warren, 263 So.2d 912 (La. App. 3 Cir. 1972), writ refused [262 La. 1096], 266 So.2d 223.
"To reach this conclusion, these cases relied on the following statement by the Supreme Court in Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1968):
`We conclude that the intent of our uninsured motorist statute and the policy endorsement issued thereunder is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists.' 218 So.2d at 583.
"In Elledge v. Warren, supra, the Third Circuit concluded:
`(t)he intent of the coverage is to protect the insured at all times against the generalized risk of damages at the hands of the uninsured motorists and not to limit coverage to certain situations or to a certain degree of risk of exposure to the uninsured motorist. * * *
"It follows that any policy provisions which narrows the coverage mandated by the statute will not be enforced. * * *

"There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer.' 263 So.2d at 918.
"We are in agreement with the First and Third Circuits.
"The statute requires that automobile liability policies provide UM coverage for the protection of persons insured under the policy, unless the named insured rejects the UM coverage. As long as a claimant is insured under the policy, he is entitled to UM coverage whether or not he is driving a vehicle listed or covered under the policy, unless the named insured has rejected the UM coverage. UM coverage, as required under the statute, is designed to protect the persons insured under the policy. Any exclusion providing for more restricted UM coverage is in derogation of the statute." (Emphasis ours.)
Therefore, we conclude that the jurisprudence clearly confirms that the plaintiff herein is afforded UM coverage under the Bellefonte policy issued to her father, Alfred Hebert.

CAN PLAINTIFF STACK THE UM COVERAGE PROVIDED BY THE BELLEFONTE POLICY?
The plaintiff contends that she should be allowed to "stack" the UM coverages provided by the policy issued by defendant to plaintiff's father which provides UM protection on two vehicles. As previously stated, this issue was not reached by the trial court. The insurance policy issued by Bellefonte to Mr. Hebert contains the following language to prohibit "stacking":
"(a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to `each person' is the *1303 limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."
The subject policy was issued on February 4, 1977 and expired one year from the date of issuance. The accident which precipitated the present litigation occurred on September 13, 1977. On September 9, 1977, Act 63 of 1977 which amended LSA-R.S. 22:1406 became effective. Act 623 provided, among other things, that the policy limits of UM coverage shall not be increased because multiple vehicles are covered by the policy. Bellefonte argues that since the policy at issuance prohibited "stacking" and since the collision giving rise to the instant suit occurred after the effective date of the 1977 amendment to LSA-R.S. 22:1406, the plaintiff should not be allowed to "stack" the limits of her father's policy in that the policy provisions were not inconsistent with the law in effect at the time of the accident.
The precise question was before this court in Thibodeaux v. Olivier, 394 So.2d 684 (La.App. 3 Cir. 1981), and we held that "stacking" was not permitted under similar circumstances. Our supreme court has denied an application for writs therein. (1981). We adhere to our decision in Thibodeaux and conclude that the plaintiff's recovery herein against Bellefonte is limited by the latter's policy to $10,000.00.

IS PLAINTIFF ENTITLED TO RECOVER PENALTIES AND ATTORNEY'S FEES?
Plaintiff contends that she is entitled to recover penalties and attorney's fees because of the alleged arbitrary and capricious refusal by Bellefonte to pay any benefits due her under the subject policy. We note that the parties stipulated to the pertinent facts of the instant case, therefore, the only issues presented concerned the interpretation of the Bellefonte policy in the light of settled jurisprudence. In Carney v. American Fire and Indemnity Company, 371 So.2d 815 (La.1979), the Louisiana Supreme Court stated:
"An insurer's liability to pay penalties and attorney's fees is based on whether their action in denying coverage is arbitrary, capricious and without probable cause. LSA-R.S. 22:658. An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees. Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App. 3 Cir. 1971), and cases therein cited."
In the suit presently before this court Bellefonte relied upon the provisions of its insurance policy to deny plaintiff UM coverage. However, the terms relied upon had previously been held by the appellate courts of this state to be null and void and in derogation of public policy. We therefore conclude that Bellefonte acted arbitrarily and capriciously in refusing to pay the $10,000.00 UM benefit to which the plaintiff is entitled. We consider that an award of $2,000.00 for her attorney's fee will adequately compensate for the services rendered by plaintiff's counsel at the trial level and on appeal.
As indicated at the outset of this opinion, this matter comes to us on appeal from a summary judgment rendered in favor of appellee, Bellefonte, dismissing plaintiff's claim against that insurance company. Ordinarily, upon finding that a motion for summary judgment has been improvidently granted by the trial court this court would not dispose of the case on the merits, but rather remand the suit for further proceedings. However, in the instant case, we observe that the parties filed a joint motion *1304 for summary judgment on an agreed stipulation of facts not limited to the resolution of the motion. Specifically, the joint motion states:
"NOW INTO COURT, through undersigned counsel, comes Plaintiff, MARY ALICE HEBERT, and Defendant, BELLEFONTE INSURANCE COMPANY, who respectfully represent that certain agreements have been reached by and between the parties, in order to avoid any unnecessary litigation, court time and expense and that in connection with said agreements, would desire to present this matter for final resolution to this Court by means of a Joint Motion for Summary Judgment ...
"Inasmuch as this matter has resolved itself into primarily issues of law and contractual interpretation, the parties have agreed to present this matter to this Court by way of stipulations of fact and the introduction of certain uncontested documents and to ask this Court to render a summary judgment in favor of the party in whose favor this Court determines the law and evidence to be in favor of." (Emphasis ours.)
Under such circumstances and under the provisions of LSA-C.C.P. Article 2164,[1] we consider that a remand of this case for further proceedings would be useless, result in unjustifiable delay and would impede the administration of justice. We find support for our conclusion in this regard in the recent decision on rehearing in the case of DeFelice v. Garon and Carimi, 395 So.2d 658, (La.1981) wherein the court stated:
"... An opinion reversing a summary judgment in favor of one party should not be written in terms that may result in a final determination (as the law of the case) granting in effect the benefit of an affirmative adjudication in favor of the opponent to the motion, unless the issues presented are purely legal and utterly devoid of factual considerations."
For the above reasons, the decree of the trial court granting summary judgment in favor of the defendant is reversed and set aside and it is now ordered, adjudged, and decreed that:
There be judgment rendered herein in favor of plaintiff, Mary Alice Hebert, and against the defendant, Bellefonte Insurance Company, in the full sum of Ten Thousand and No/100 Dollars ($10,000.00), plus a penalty of Twelve Per Cent (12%) thereof and an attorney's fee in the amount of Two Thousand and No/100 Dollars ($2,000.00), with legal interest on all amounts from date of judicial demand at the rate of Seven Per Cent (7%) per annum until September 12, 1980, and thereafter at the rate of Ten Per Cent (10%) per annum until paid. Defendant is cast for all costs incurred at the trial level and on appeal.
REVERSED AND RENDERED.
STOKER, J., concurs.
GUIDRY, J., concurs in part and dissents in part and assigns reasons.
LABORDE, J., concurs in part and dissents in part and assigns reasons.
GUIDRY, Judge, concurring in part and dissenting in part.
I fully concur with the conclusions of the majority that plaintiff is afforded coverage under the uninsured motorist provisions of the automobile insurance policy issued by Bellefonte to plaintiff's father, Alfred Hebert, and that she is entitled to recover penalties and attorney's fees for Bellefonte's arbitrary and capricious refusal to pay benefits due under that policy. However, I respectfully dissent from the majority's conclusion that plaintiff, under the particular circumstances of this case, cannot stack the UM coverages.
The insurance policy issued by Bellefonte to Mr. Hebert contains the following language which seeks to prohibit "stacking":

*1305 "(a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages, including damages for the care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provisions respecting each person, the limit of liability stated in the declaration as applicable to `each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."

The subject policy was issued on February 4, 1977 and expired one year from the date of issuance. The accident which precipitated the present litigation occurred on September 13, 1977. On September 9, 1977, Act 623 of 1977 which amended LSA-R.S. 22:1406 became effective. Act 623 restricted the applicability of "stacking" to certain specific situations, which are admittedly not applicable in this case. My brethren of the majority conclude that since the policy at issuance prohibited "stacking" and since the accident giving rise to the instant suit occurred after the effective date of the 1977 amendment to LSA-R.S. 22:1406, the plaintiff cannot "stack" the limits of her father's policy in that the policy provisions were not inconsistent with the law in effect at the time of the accident. This same result was reached under similar factual circumstances in the case of Thibodeaux v. Olivier and Fireman's Fund Insurance Company, 394 So.2d 684 (La.App.1981).[1] For the reasons set forth hereafter I respectfully disagree with the result reached on this issue in this case and in Thibodeaux, supra.
Although the terms of the subject policy seek to prohibit "stacking", at the time the subject policy was issued, the courts of our state had determined that "stacking" was not prohibited by the provisions of the Louisiana Insurance Code. See Barbin v. United States Fidelity and Guaranty Co., 315 So.2d 754 (La.1975); Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App. 3rd Cir. 1974), writ granted 302 So.2d 304 (La.1974), dismissed, 309 So.2d 657 (La. 1974). In fact, at the time the policy was issued, such policy provisions, according to numerous appellate decisions, were in derogation of the provisions of the applicable law, specifically, LSA-R.S. 22:1406 as amended by Act 154 of 1974.[2] See Anderson v. West, 354 So.2d 636 (La.App. 1st Cir. 1977), writ refused, 356 So.2d 1013 (La. 1978); Hayden v. Torrence, 355 So.2d 1362 (La.App. 1st Cir. 1978), writ refused, 357 So.2d 1166, 1169 (La.1978). Our brethren of the First Circuit in Anderson, supra, considered the issue of stacking under LSA-R.S. 22:1406(D) as amended by Act 154 of 1974 stating:

"The permissibility of stacking had already been jurisprudentially approved prior to the 1974 session of the Louisiana *1306 Legislature. Considering the particularity with which the legislature by Act 623 of 1977, Regular Session, prohibited stacking, we must conclude that if the legislature had intended to preclude stacking by the 1974 act, that it would have so said, as it seemingly has done by Act 623 of 1977. Therefore, regardless of any possible interpretation of Act 154 of 1974, and regardless of the broadness of the language contained therein, we are of the opinion that it was not the intention of the legislature in 1974 to prohibit stacking. The public policy of Louisiana as enacted by the legislature and interpreted by the Courts provided that stacking was permissible, and any language contained in insurance policies to prohibit stacking and avoid a stated policy of the state was null and void. Thus, we now hold that any language in the instant Hartford policy intended to prohibit stacking is null and void."[3] (Emphasis ours)
I fully agree with the findings of the Anderson court and would conclude that the provisions of the Bellefonte policy which sought to prohibit "stacking" were of no effect as contra to the public policy.
It is well settled that Louisiana's laws are considered as written into all insurance policies. Thus, the Insurance Code is considered to form part of all insurance contracts as if written into them. See Succession of Feist, 274 So.2d 806 (La.App. 4th Cir. 1973), writ granted, 277 So.2d 670 (La. 1974), aff'd in part and reversed in part, 287 So.2d 514 (La.1973); Webb v. Zurich, 251 La. 558, 205 So.2d 398 (La.1967). LSA-R.S. 22:623 specifically provides that no insurance contract shall contain any provision inconsistent with or contradictory to any standard provision used or required to be used by the applicable chapter(s) of the Insurance Code. The quoted provisions of the Bellefonte policy when issued and delivered were clearly inconsistent with and contradictory to the provisions of LSA-R.S. 22:1406 as judicially interpreted and therefore, should be considered as not written since stipulations in an insurance policy are without legal effect if contrary to law. Webb v. Zurich Insurance Company, supra.
Bellefonte asserts that the law applicable to the present litigation is that in force at the time of the accident, thus, plaintiff is prohibited from "stacking" due to Act 623 of 1977. I cannot agree. A substantive amendment has no retroactive effect on existing insurance contracts. O'Banion v. Allstate Insurance Company, 347 So.2d 878 (La.App. 3rd Cir. 1977); Ryder v. Trisler, 367 So.2d 1257 (La.App. 3rd Cir. 1979); Manuel v. American Indemnity Company, 368 So.2d 1200 (La.App. 3rd Cir. 1979). In Ryder, supra, our court considered whether or not the provisions of Act 154 of 1974 applied to insurance policies issued before the effective date of the Act and concluded that the provisions of that amendment applied only to policies issued after its effective date. Although not the precise issue before the Court, the Louisiana Supreme Court in Courville v. State Farm Automobile Insurance Company, et al., 393 So.2d 703 (La.1981) painstakingly indicated an adherence to the general rule that insurance policies shall be interpreted in light of the law existing at the time of issuance of said policies not as of the time of the accident as defendant herein suggests. In O'Banion, supra, this court confronted a factual situation which presented exactly opposite circumstances as in the instant case. There, our court determined that a statutory amendment, which if applied retroactively *1307 to a policy, would give the insured added benefits which he had not expected to receive, which the insurer had not agreed to pay, and for which no premiums were paid, cannot be construed as amending an insurance contract since it would impair the obligations of that contract by imposing a more onerous obligation on the insurer which neither party had contemplated or agreed to at the time the policy was issued. In the suit presently before this court, the defendant knew at the time the policy was issued that it was subjected to the risk of "stacking" the UM coverage provided by the subject policy and applicable to the two vehicles owned by Mr. Hebert. Further, Mr. Hebert presumably contracted for such coverage contemplating his right to "stack" the UM coverage. Just as this court determined in O'Banion, supra, that the retroactive application of a statutory amendment may not bestow additional benefits not contracted for by the parties to the agreement, I would conclude that a statutory amendment may not be applied retroactively which would operate to take away "bargained-for" benefits flowing to the insured.
In summary, I would find that the policy provisions which seek to prohibit "stacking" were contrary to public policy when the policy was issued and delivered and are therefore invalid and of no effect. Further, I would conclude that the relationship of the parties to the subject insurance agreement is governed by the applicable provisions of the Louisiana Insurance Code as existing at the time the subject policy was issued. For these reasons I respectfully disagree with the conclusion of the majority that plaintiff is not entitled to stack the UM coverage of the Bellefonte policy.
LABORDE, Judge, concurring in part and dissenting in part.
With the majority's conclusion, that plaintiff is afforded UM coverage under the policy issued by Bellefonte to her father, and that she is entitled to recover penalties and attorney's fees, I fully agree.
I respectfully disagree with the majority's conclusion that plaintiff is not entitled to stack the UM coverage under the Bellefonte policy.
It is my opinion that insurance policies should be interpreted in light of the law existing at the time of issuance of the policy. Stacking was permitted at the time this policy was issued. No contract language or subsequent statutory amendment can deprive plaintiff of her rights as they existed on February 4, 1977, the date the subject policy was issued. Our Supreme Court in Courville v. State Farm Automobile Insurance Company, et al., 393 So.2d 703 (La.1981) recently reaffirmed the general rule that insurance policies shall be interpreted in light of the law existing at the time of issuance of said policies.
For these reasons, and for the reasons assigned by Judge Guidry with which I fully agree and adopt as my own, it is my opinion that plaintiff is entitled to stack the UM coverage of the Bellefonte policy.
NOTES
[1] LSA-C.C.P. Article 2164 provides:

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
[1] In Thibodeaux, supra, plaintiff-appellee-appellant applied to the Louisiana Supreme Court for a writ of certiorari, however, the application was denied on March 27, 1981. Although a writ of certiorari was denied such denial does not constitute an approval of the court of appeal's decision nor does it create precedent. White v. Louisiana Western Ry. Co., 174 La. 308, 140 So. 486 (La.1932); Lombardo v. Argonaut Insurance Co., 354 So.2d 731 (La.App. 4th Cir. 1978), writ denied, La., 355 So.2d 1325.
[2] Act 154 of 1974 provides in pertinent part:

"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits."
We observe that LSA-R.S. 22:1406(D) was amended by Act 494 of 1975, however, that amendment made no change which affects the issue presently before this court.
[3] The exclusionary provisions applicable to the UM policy in Anderson were similar to those with which our court is concerned. The Anderson policy provided:

"LIMITS OF LIABILITY: Regardless of the number of (1) persons or organizations who are insured under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) automobiles or trailers to which this policy applies,
* * * * * *
"(C) The limit of Coverage DUninsured Motorist stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as a result of any one accident."