433 So.2d 1040 (1983)
Richard A. BLOCK
v.
RELIANCE INSURANCE COMPANY.
Davetta Caughey FARIA and Roy Dunscomb Gregory Caughey
v.
Karl Randall SMOAK, State Farm Mutual Automobile Insurance Company and Casualty Reciprocal Exchange.
Nos. 82-C-1956, 82-C-2083.
Supreme Court of Louisiana.
May 23, 1983.
Charles Hanemann, Henderson, Hanemann & Morris, Houma, for plaintiff-appellant in No. 82-C-1956.
John Nickerson Chappius, Voorhies & Labbe, Lafayette, for respondent in No. 82-C-1956.
Byron A. Richie, C. Vernon Richie, Richie & Richie, Shreveport, for applicant in No. 82-C-2083.
*1041 James P. Bodenheimer, Bodenheimer, Jones, Klotz & Simmons, Harry A. Johnson, Jr., Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for respondents in No. 82-C-2083.
DIXON, Chief Justice.
These two consolidated cases raise the issue of whether the plaintiffs are entitled to combine the uninsured motorist coverage on each of the multiple vehicles listed in their policies. The policies were issued prior to the passage of Act 623 of 1977, the "anti-stacking" amendment, while the accidents occurred after the effective date of the provision. Both appellate courts ruled in favor of the insurance companies, holding that the plaintiffs were not entitled to "stack" their uninsured motorist coverage.
The facts are not in dispute in either case. On November 19, 1977 plaintiff, Richard A. Block, was involved in a head-on collision with a vehicle owned and driven by John Messer, an uninsured motorist. At the time of the accident plaintiff was acting in the course and scope of his employment with Offshore Services and Transportation, Inc. Plaintiff was driving his own pickup truck which was insured under a fleet policy by defendant, Reliance Insurance Company. The policy, issued on December 1, 1976 for a one year period, covered at least thirty-four vehicles and provided uninsured motorist coverage of $5000/$10,000 for each insured vehicle. The named insureds were listed as Louis J. Michot & Associates, Inc., Billy M. Corporation and Louis J. Michot, Jr., individually. According to the endorsements, Richard Block and his 1975 Ford Courier and his 1975 Chevrolet truck were added to the fleet policy as additional interests on July 15, 1977.[1] At his deposition, Block stated that even though he was added to the company policy, he paid for his insurance coverage himself.[2]
Block brought suit against Reliance Insurance Company, alleging recovery of $170,000 under the uninsured motorist provisions of the policy. The trial court concluded *1042 that the collision was caused by the negligence of the uninsured motorist, and rendered judgment in favor of Block and against Reliance. Even though plaintiff's damages were assessed in the amount of $66,000, the trial court only awarded Block judgment of $5000 against Reliance, holding that plaintiff was not entitled to "stack" the multiple uninsured motorist coverages. The First Circuit Court of Appeal affirmed. Block v. Reliance Insurance Company, 417 So.2d 29 (La.App.1982).
The other case involves a similar factual situation. Plaintiffs, Davetta Caughey Faria and Roy Dunscomb Gregory Caughey, sought damages for the wrongful deaths of their parents, Walter and Ruth Caughey, who were killed in an automobile accident on December 1, 1977. The decedents were involved in a head-on collision with Karl Randall Smoak, an underinsured motorist, who was driving his automobile in the wrong lane of the highway. Casualty Reciprocal Exchange, defendant, had issued a family combination automobile policy to the decedents effective from May 14, 1977 to May 14, 1978, providing uninsured motorist coverage in the amounts of $10,000 per person and $20,000 per accident for each of the three vehicles owned by the decedents. The trial court rendered judgment in favor of the plaintiffs and against Casualty Reciprocal Exchange in the amount of $40,000[3] and allowed the "stacking" of the uninsured motorist benefits. The Second Circuit Court of Appeal reversed the finding of the trial court and denied the "stacking" of the insurance coverage. Faria v. Smoak, 416 So.2d 132 (La.App.1982).
R.S. 22:1406(D), the uninsured motorist statute, provides that automobile liability insurance, delivered or issued for delivery in Louisiana, with respect to vehicles registered or principally garaged here, shall contain coverage for the protection of insureds who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of injury, unless such coverage has been rejected. The object of the statute is to promote recovery of adequate damages for innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Johnson v. Fireman's Fund Insurance Co., 425 So.2d 224, 226 (La.1982); Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Niemann v. Travelers Insurance Co., 368 So.2d 1003 (La.1979). The intent of uninsured motorist coverage is "to protect the insured at all times against the generalized risk of damages at the hands of the uninsured motorists, not to limit coverage to certain situations or to a certain degree of risk of exposure to the uninsured motorists." Elledge v. Warren, 263 So.2d 912, 918 (La.App.), writ denied, 266 So.2d 223 (La. 1972).
To assure that the injured person has a better opportunity for adequate compensation, this court in Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972), and in Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972), first approved combining, or "stacking", benefits under uninsured motorist endorsements. "Stacking" occurs when a claimant is allowed to recover up to the maximum from two or more applicable insurance coverages. Note, Uninsured Motorist InsuranceStacking Comes to Louisiana, 33 La.L.Rev. 145, 147 (1972).
In Graham v. American Casualty Co. of Reading, Pa., supra, and in Deane v. McGee, supra, we permitted the stacking of uninsured motorist coverage under separate policies of insurance. In Barbin v. United States Fidelity & Guaranty Co., 315 So.2d 754 (La.1975), stacking was allowed for multiple vehicles insured under one family *1043 policy. See McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La.L.Rev. 691, 718 (1983). Uninsured motorist coverage is not limited to use of a listed insured automobile by the injured person; the coverage is to protect the insured from damage caused by a negligent uninsured motorist whether the injured insured is occupying an automobile listed in the policy, another automobile owned or unowned, or is occupying no automobile. See Branch v. O'Brien, 396 So.2d 1372, 1375 (La.App.), writ denied, 400 So.2d 905 (La. 1981); McKenzie, supra at 699.
Even though stacking was permitted by the courts under R.S. 22:1406(D) and the public policy it expressed, the insurance companies continued to issue policies which contained clauses preventing stacking. These clauses, however, "could not be enforced because of the judicial conclusion that they were in conflict with the mandatory coverage provisions of the UM statute." McKenzie, supra at 722. Graham v. American Casualty Co. of Reading, Pa., supra, and Deane v. McGee, supra, had held that R.S. 22:1406(D) embodied public policy. Therefore, any clause in derogation of the mandatory requirements set forth in the UM statute was invalid insofar as it conflicted with them. Seaton v. Kelly, 339 So.2d 731, 733-734 (La.1976).
Both insurance policies in the cases before us contain provisions claimed to bar stacking.[4]
On September 9, 1977 Act 623 of 1977 became law. This Act amended R.S. 22:1406(D) to allow insurers to prohibit "stacking" of uninsured motorist coverage.[5] *1044 The plaintiffs argue that the amendment to R.S. 22:1406(D) cannot alter the effect of a preexisting contract, and the provision in the contract which prohibits stacking remains unenforceable. They assert that the rights conferred by the policy at the time of its issuance were contractual and property rights which cannot be altered by Act 623 of 1977. To do so, plaintiffs urge, would be to give that Act retroactive effect which is prohibited by Article 1, Section 23[6] of the Louisiana Constitution of 1974 and C.C. 8.
The insurance companies, on the other hand, contend that the "anti-stacking" amendment validated the clause in the contract prohibiting stacking, and that the plaintiffs are only entitled to one uninsured motorist coverage. They assert that at the time each insured's cause of action arose the date of the accidentthe law applicable prohibited stacking.
Article 1, Section 23 of the Louisiana Constitution prohibits the legislature from enacting any law which impairs the obligation of a contract. Where the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute. "A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." C.C. 8.
Policies issued in Louisiana are considered to contain all provisions required by statute. Webb v. Zurich Insurance Co., 251 La. 558, 205 So.2d 398 (1967). Accordingly, R.S. 22:1406(D) is incorporated into every policy of insurance to which it is applicable, as if it were written in the policy itself. No insurance contract can include any provision inconsistent with or contradictory to any standard provision used or required to be used by the applicable sections of the Insurance Code. R.S. 22:623. Any policy provision which narrows the coverage mandated by the statute will not be considered.
In both cases before us the contract between the plaintiff and the insurance company was entered into when the jurisprudence permitted stacking. The accidents occurred after the passage of the anti-stacking amendment. The provisions in the contracts which are claimed to prevent stacking were invalid and unenforceable at the time the contracts were entered into. Barbin v. United States Fidelity & Guaranty Co., supra.
Here the insurance policies were inconsistent with and contradictory to the provisions of R.S. 22:1406(D) as judicially interpreted. The obligations assumed by the insurers in both cases were assumed against a backdrop of R.S. 22:1406(D) before the anti-stacking amendment was passed. At the time the policies were issued the insurers knew that they were subjected to the risk of stacking of multiple UM coverages, in spite of the policy provisions.
An insurer is not at liberty to limit its liability and impose conditions upon its obligations that conflict with statutory law or public policy. Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939). See also Commercial Union Insurance Co. v. Advance Coating Co., 351 So.2d 1183 (La. 1977).
Hebert v. Breaux, 398 So.2d 1299 (La. App.), writ denied, 401 So.2d 986 (La.1981), and Thibodeaux v. Olivier, 394 So.2d 684 (La.App.), writ denied, 397 So.2d 1360 (La. 1981), were relied on by the Courts of Appeal, apparently because this court had denied writs. Writ denials are not authoritative; they do not make law. DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981), cert. denied, ___ U.S. ___, 103 S.Ct. 82, 74 L.Ed.2d 78 (1982); Garlington v. Kingsley, 289 So.2d 88 (La.1974). Hebert v. *1045 Breaux, supra, and Thibodeaux v. Olivier, supra, are overruled.
The question of stacking only arises when it is determined that the person seeking to cumulate benefits is an insured under the terms of the policies he is seeking to stack. Seaton v. Kelly, supra. R.S. 22:1406(D)(1)(a) requires that no automobile liability insurance shall be delivered in this state unless uninsured motorist coverage is provided therein "for the protection of persons insured thereunder." Before the anti-stacking statute, if a plaintiff were an insured under two or more policies, or one policy covering two or more automobiles, and paid premiums for two or more different uninsured motorist coverages, he could cumulate the coverages. Seaton v. Kelly, supra at 733-734; Graham v. American Casualty Co. of Reading, Pa., supra; Deane v. McGee, supra.

FARIA v. SMOAK
In Faria v. Smoak, the Caugheys paid premiums for uninsured motorist coverage for three vehicles under one family combination automobile policy. They were the named insureds under the policy. By purchasing a policy covering their three vehicles, the Caugheys expected the protection of the coverage paid for on all three vehicles. In Barbin v. United States Fidelity & Guaranty Co., supra, stacking was allowed for multiple vehicles insured under one policy. We noted that R.S. 22:1406 required that an insurer provide UM coverage in certain limits for each insured vehicle. Thus, this court concluded that, as long as premiums were paid for multiple uninsured motorist coverages, the coverages could be stacked. The plaintiffs therefore are entitled to stack the coverages paid for by the Caugheys.

BLOCK v. RELIANCE INSURANCE COMPANY
In Block v. Reliance Insurance Company, a "fleet policy" was involved, not a family combination automobile policy. A fleet policy is generally issued to a business to provide coverage for several vehicles owned or operated by the company. The named insureds are often the company and the officers of the company, who are responsible for the payment of the premiums.
In only two cases have we had the opportunity to consider the stacking of uninsured motorist coverage under policies covering large numbers of cars, and in both cases we denied writs, even though the lower courts arrived at conflicting holdings. In Briley v. Falati, 367 So.2d 1227 (La.App.), writ denied, 369 So.2d 1379 (La.1979), the Fourth Circuit held that a person insured only as a lessee of a vehicle was not entitled to stack separate uninsured motorist coverages on sixty-six vehicles included in a multi-vehicle policy issued to the lessor. In Holmes v. Reliance Insurance Co., 359 So.2d 1102 (La. App.), writ denied, 362 So.2d 1120 (La.1978), the Third Circuit permitted stacking under a garage liability policy insuring one hundred sixty vehicles. The plaintiff was driving a car owned and insured by his employer.
The present case is distinguishable from Briley v. Falati, supra, and Holmes v. Reliance Insurance Co., supra, in that Richard Block was an insured under the policy. He was designated as an insured in a later endorsement to the fleet policy. In the Briley case, the plaintiff was not an insured under the fleet policy; in the Holmes case, the policy was not a "fleet" policy, but did cover one hundred sixty vehicles, including the one driven by the plaintiff.
The first question to be answered is whether the injured plaintiff is an insured under the policy. Seaton v. Kelly, supra. In the present case the endorsements to the policy clearly designate Block as an insured. Block's coverage under the fleet policy is unique. He was not the named insured in the principal policy. Instead, he became an insured on July 15, 1977 in an "additional interest" endorsement under the liability portions of the policy.[7] The "Additional *1046 Interest Endorsement" is not further explained or defined in the policy.
Block was operations manager for an off shore services and transportation business. When the accident happened he was in the course and scope of his employment, driving the small pickup described in the endorsement (see footnote 1), transporting Glenn Piggot (the port captain for the business) from one of the company's boats to inspect another boat. Block bought the truck to use in his employment, adding a camper body to it for transporting parts, supplies and materials. The truck was added to the company's policy by the endorsement; there was no other insurance on it. The added premiums for the endorsement were deducted from Block's expense check by his employer, who paid him on a mileage basis for the use of the truck in the business.
Block is specifically designated an insured in the endorsement, which states that the liability coverage should apply to his interest "as an insured." The schedule of coverages accompanying the endorsement break down the premiums charged for bodily injury and property damage liability, and for medical payments, comprehensive and collision insurance, as well as uninsured motorist coverage for each of Block's vehicles.
Under the terms of the Uninsured Motorist coverage in the policy, Block was "occupying an insured highway vehicle" according to paragraphs II(b) and V(a) (definition of "insured highway vehicle.")[8] There was available to him, therefore, the same right to cumulate the uninsured motorist benefits that were available to an insured when the policy was issued.
The judgments of the Courts of Appeal in both cases are reversed, at respondents' cost. In Faria et al. v. Smoak et al., No. 82-C-2083, the judgment of the district court is reinstated. In Block v. Reliance Insurance Company, No. 82-C-1956, the judgment of the district court is amended to grant judgment in favor of Richard A. Block and against respondent Reliance Insurance Company in the full sum of $60,000, plus interest as therein provided, and otherwise affirmed and reinstated.
NOTES
[1] ">1.

[2] According to the endorsement Block's total endorsement premium for the period from July 15, 1977 to December 1, 1977 was $625.00 for both of his vehicles. The uninsured motorist premium for this four and a half month period was $3.00 per vehicle, for a total of $6.00. His total annual premium for uninsured motorist coverage was $9.00 per vehicle, for a total of $18.00.
[3] Casualty Reciprocal Exchange had paid into the registry of the court the sum of $20,000 which it admittedly owed. Thus, the plaintiffs only brought suit for $40,000, the total uninsured motorist coverage on the other two vehicles insured by the decedents.
[4] The fleet policy issued by Reliance (with Richard Block added as an "additional interest") contains the following language limiting liability:

"Regardless of the number of (1) persons or organizations who are insureds under this policy, (2) persons who sustain bodily injury, (3) claims made or suits brought on account of bodily injury, or (4) highway vehicles to which this policy applies,
(a) The limit of liability stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting `each person', the limit of liability stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."
Casualty Reciprocal Exchange issued a family combination automobile policy containing similar language to Mr. and Mrs. Caughey. The limitation of liability section of the Casualty Reciprocal Exchange policy states:
"Limits of liability: The limit of bodily injury liability stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to `each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.
The limit of property damage liability stated in the declarations as applicable to `each occurrence' is the total limit of the company's liability for all damages arising out of injury to or destruction of all property of one or more persons or organizations, including the loss of use thereof, as the result of any one occurrence."
[5] Act 623 of 1977 added subsection D(1)(c) to R.S. 22:1406. This subsection states in pertinent part:

"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1) ...
(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."
[6] "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted." Art. 1, § 23, La.Const.
[7] The policy was originally issued by Reliance Insurance Company to Louis J. Michot and Associates, Inc., Billy M. Corporation, and Louis J. Michot, Jr., individually, on December 1, 1976. The policy period extended from December 1, 1976 to December 1, 1977. On July 15, 1977, Richard Block was included as an "additional interest" in respect to a 1975 Chevrolet truck and a 1975 Ford Courier. Thus Block became an insured for these two vehicles. See note 1 supra for the language of the endorsement.
[8] Paragraph II(b) states as follows:

"II Persons Insured
Each of the following is an insured under the insurance to the extent set forth below:
. . . . .
(b) any other person while occupying an insured highway vehicle;..."
Paragraph V(a), the definition of an "insured highway vehicle," states:
"V. Additional Definitions
When used in reference to this insurance (including endorsements forming a part of the policy):
. . . . .
`Insured highway vehicle' means a highway vehicle:
(a) described in the schedule as an insured highway vehicle to which the bodily injury liability coverage of the policy applies; ..."